# Charles Sevier v. John M. Ross & Co. et al.

The release of errors at law required by the statute, on filing a bill for an injunction to stay proceedings at law, applies only to the defendant in the execution, not to third persons.

The emanation of an injunction works *ipso facto* a release of errors.

As a general rule, where the personal property of a third person is seized under an execution, he will be left to his remedy at law; but the importance which has been attached to slave property in the slaveholding states has induced the establishment of a different rule in regard to that species of personal property, even without any allegation of peculiar and special value.

Where an execution was returned 'satisfied,' and the plaintiff's receipt for the money entered of record by his consent, although no money was in fact paid, and a third person subsequently purchased the property of the defendant in the execution, on which said judgment was a lien: held, that the purchaser took the property discharged of the judgment lien.

On the 4th November, 1840, complainant, Charles Sevier, purchased from John Briscoe thirty odd negroes and other personal property, for an adequate price then accepted by Briscoe as full consideration, and took immediate possession of the same. On 11th January, 1841, complainant purchased Briscoe's land at marshal's sale; about one thousand acres.

At the time of said purchase there were no liens on record or otherwise on Briscoe's property, except some small judgments since paid off; the land was purchased under the oldest execution then unsatisfied against Briscoe.

In November, 1842, six of said negroes were seized by the sheriff of Madison county, under and by virtue of an execution from the circuit court of said county, purporting to be on a judgment rendered for thirteen hundred and seventy-eight dollars and thirty three cents, in favor of A. McWhorter, J. H. McWhorter, John M. Ross and Walter Byrnes, (John M. Ross & Co.) v. Urbane B. Oglesby, Thomas Collin and John Briscoe; and J. Silverbury afterwards became defendant by joining in a forthcoming bond. Said property was advertised for sale 21st November, 1842.

On 17th January, 1839, a previous execution was issued in said cause, and duly returned by the sheriff of Madison county, on 16th February, 1839, "satisfied in full." Complainant supposes the debt was then paid. Said return remained among and a part of the records of said court from that time up to the time of complainant's purchases; and since that time unchanged and unreversed, till May, 1842, when, on motion of John M. Ross & Co. without notice to complainant, said court ordered the return of 16th February, 1839, to be set aside and annulled, and new execution issued. All knowledge or notice of any fact, at the time of the purchase, tending in any manner to invalidate said return, is denied. But complainant charges that said judgment was actually satisfied, and John M. Ross & Co. or their agent or attorney, long since, have got their money.

The bill refers to an order of John B. Howcott, attorney of John M. Ross & Co. to said sheriff, in favor of William R. Chambers, ordering him to pay plaintiff's money and his tax fee to said Chambers; a receipt on the sheriff's docket, executed by Chambers, in the name of John M. Ross & Co. for fourteen hundred and sixty dollars and two cents, in full for plaintiff's money and attorney's commission, and tax fee five dollars; also a power of attorney, executed by A. McWhorter, one of the plaintiffs, authorizing Chambers to collect the money.

The bill charges that Chambers was the agent of John M. Ross & Co. fully authorized to act in this matter. The father of said Chambers (Benj. Chambers) professed to have some interest in the note on which the judgment was founded; seemed to have the management of it, &c. Complainant thinks it strange that B. Chambers should endeavor to annul the acts of his son, &c.

The bill also charges that if the judgment has not been paid and satisfied, it ought to be paid by George Calhoon; that U. B. Oglesby was the principal debtor; the other defendants were only sureties. Some time before the 16th February, 1839, Oglesby contracted with Calhoon to pay said judgment. Calhoon agreed to pay it, in consideration of a tract of land sold by Oglesby to Calhoon, the title to which remained in Briscoe. Calhoon procured the execution to be returned satisfied as aforesaid, and paid the sheriff, as complainant supposes; and it was in consideration

of this, and on the supposition and belief that Briscoe was wholly discharged therefrom, that Briscoe made a conveyance of the land to Calhoon, on the 8th of March, 1839.

It is also charged in the bill that the sheriff of Madison county and his official sureties are either insolvent, or in such doubtful circumstances, that complainant's remedy *v.* sheriff at law for the wrongful seizure and sale of his property would be wholly inadequate, &c.; and that before the levy was made on complainant's property, plaintiffs in execution were requested by defendants in execution to make a levy on the land conveyed by Briscoe to Calhoon, which was refused; and that if Sevier's property be sold under said execution he has no recourse on his vendor Briscoe, because he is wholly insolvent.

The bill prays for injunction, &c. which was granted by the circuit judge.

The defendants moved the chancellor to dissolve the injunction for want of equity on the face of the bill.

W. R. HILL, for the motion.

It is respectfully submitted that the injunction must be dissolved:

First. Because there has been no release of errors filed previous to granting the injunction.

Second. Because the complainant, if entitled to any relief, has a plain and adequate remedy at law.

First. The law of this state is explicit, How. and Hutch. Dig. 514. "No injunction shall be granted to stay an execution of any judgment at law, unless the party applying for such injunction, or to be benefitted thereby, shall first sign and seal a release of errors in such judgment at law." It will be said that this injunction is not to operate as a stay of execution, except as to complainant's property; and that as he is not the defendant at law, he cannot release errors. As to the first proposition, it is denied. The execution is levied on Sevier's property to a sufficient extent to satisfy the debt and costs. Whilst this levy is undisposed of, none other can be made; so that whatever may be the terms of the injunction, its effect is to stay execution altogether until this case is disposed of, or the injunction dissolved. As to the other excuse, that com-

44*

plainant is not defendant at law, and cannot therefore release, it may be remarked, that the statute declares that any person to be "benefitted thereby" shall release.   Now who is to be "benefitted" by this injunction?   Most certainly Briscoe.   He has conveyed to complainant.   He is liable over on failure of title, or for incumbrances affecting the property.   Besides, Sevier is his privy, and must be affected so far as concerns this property by acts done or suffered by him.   If, then, Sevier cannot himself release, is he entitled to his injunction until Briscoe releases, the party "to be benefitted?"   Or if Briscoe refuses to release, ought not complainant to set this fact up in his bill as an excuse for not procuring such release?   The statute certainly intended to restrict the suitor in equity, in such cases, to one tribunal; to prevent him from taking advantage of errors at law, if he sought relief in chancery. The object is a most laudable one, and should whenever practicable be carried out.

In this case it is quite apparent that the complainant is unwilling to forego his legal rights, if any he has.   He and Briscoe are identified in interest.   *Pro forma* they are here represented as antagonists.   If however this bill fails to accomplish its object, Briscoe is to sue out a writ of error from the decision of the court of law, setting aside the satisfaction on the execution, and thus the advantage of two trials in two distinct tribunals is obtained, the very thing intended to be guarded against.

Second.  This court has no jurisdiction where there is plain and adequate remedy at law.

The entry of satisfaction on the execution must either operate as a suspension of the plaintiff's lien, or it does not.   Let it be assumed for the sake of argument, that the judgment lien is suspended during the existence of this entry, and it follows that the complainant has a perfect legal title to the property in question free and clear of this lien, unless the conveyance be fraudulent; and the question occurs, can a bill be entertained to restrain the sale of slaves taken in execution as the property of another.   In those states where no other than the common law remedies of trover and detinue exist, it has been held, and indeed may be regarded as well established doctrine, that equity will not interfere unless under very peculiar circumstances.

Charles Sevier *v.* John M. Ross & Co. *et al.*

Thus it has been held in Virginia, that an injunction shall not issue to restrain the sale of personal property taken in execution as the property of another, unless from the peculiar value of the property the remedy at law is incomplete. 3 Randolph, 25 ; and the same doctrine is maintained. 3 Ib. 586. If proceedings under an execution be wholly void, no title will pass to the purchaser, and the owner may obtain redress in detinue, and consequently equity has no jurisdiction. 4 Randolph, 427.

As a general rule, where slaves are improperly taken in execution, the owner may ask the aid of equity to restrain the sale; not however if they have no peculiar value, but are merely regarded as property. 6 Randolph, 194. In Kentucky it has been held that a bill in equity will not be sustained to restrain the sheriff from selling slaves taken in execution, unless some peculiar circumstances are alleged, showing that the remedy at law is inadequate. 3 Bibb, 487; 4 Bibb, 235. In South Carolina it has been held that a bill to compel the specific performance of a contract in relation to family slaves may be entertained. Sarten *v.* Gorden, 2 Hill, Ch. This case is perfectly reconcilable with the English cases, as it proceeds on the ground that the slaves had a peculiar value to complainant.

Wherever the courts of this country have held that equity would interfere either to enforce specifically a contract in relation to per sonalty or to restrain its sale under execution, some peculiar circumstances have existed, showing that adequate remedies did not exist at law. In the case of slaves it has been shown that a peculiar value attached to the particular slaves, as that they were family servants, domestic or body servants, having a value affixed to them, as regards the owner, not to be compensated in damages. And to give this court jurisdiction, those peculiar circumstances must be alleged in the bill. In the present bill the slaves are not stated to have any peculiar value not belonging to them as mere property ; they are simply mentioned as any other species of personalty ; nor is any reason set forth to show why the owner could not be amply compensated in damages ; the bill is therefore radically defective, and would be demurrable in England, and in those states where no other than the common law remedies exist. In this state it may be confidently asserted that consistently with

Charles Sevier *v.* John M. Ross & Co. *et al.*

principle no bill to enjoin a sale of personal property under *fi. fa.* can be entertained in any case. The only reason as has been shown that equity ever assumed such jurisdiction, was that the remedy at law was incomplete; where however that remedy is ample and will enable the claimant to recover the property specifically, the reason ceases, and the jurisdiction should cease. I need only refer to the laws of this state giving the claimant of personal property the right of possession after it has been levied on under execution. How. & Hutch. Dig. 514. A full and complete remedy is here afforded for the very case now before the court, to say nothing of the late replevin law. Acts of 1842, page 124, which if possible enlarges the remedy.

The foregoing views are predicated on the assumption that the lien of the execution was suspended, at least as to property *bona fide* sold, during the continuance of the entry of satisfaction. This is the most favorable view of the case that can be presented for the complainant; and admitting it to be correct, no title would pass to the purchaser under this levy, and the complainant has a plain and adequate remedy at law.

Taking however the other view (and this I apprehend is the more correct one,) that the lien of the judgment still continued, notwithstanding the wrongful entry of satisfaction, and how stands the complainant's case? Why, either the entry of satisfaction was lawfully and properly made by the sheriff, or it was not. If the former, then the circuit court of law erred in setting it aside, and in this case the proper remedy is an appeal or writ of error from this supposed erroneous decision.

If, however, the entry of satisfaction was improperly and unlawfully made by the sheriff, it was rightfully set aside, and the whole ground of relief on the part of the complainant resolves itself into this: that by the wrongful act of the sheriff (i. e. in entering satisfaction on the execution) he has been deceived into the belief that the property he purchased was unincumbered, and he asks this court to visit this act of the sheriff, on the heads of the plaintiffs in execution, that he may be spared, and they sustain the loss. On what ground? Have the execution creditors been guilty of any fraud? None is imputed to them. Have they coun-

tenanced or in any wise, with a knowledge of the facts, sanctioned the acts of the sheriff? No such allegation is made. On the contrary, it is stated they are non-residents, and although they had here a collecting agent, his authority was limited to the acts of receiving money; he had none to make arrangements. Something is, I think, said, though not as an allegation distinctly made, about the improbability of a father not ratifying the agency of his son, William R. Chambers. It should have been distinctly alleged that the father was authorized to ratify. The agent was appointed, not by his father, but by the plaintiffs in execution; nor has the father any interest in the matter.

It may be said that the plaintiffs in execution have their remedy against the sheriff and his sureties. A remedy without redress against an insolvent sheriff in Texas and his insolvent sureties. And why has not the complainant the same remedy? If a sheriff under *colore officii* does an act whereby injury results to another, he and his sureties are liable.

After all, the most that can be said is, that it is a hard case on the complainant. And is it not equally hard on the part of the execution creditors to lose their debt? At any rate, the equities are equal, and where this is the case, the law must prevail.

I cannot admit that complainant has any higher equity than Briscoe, his vendor. Has he any? I do not recollect that the bill states Briscoe's insolvency. If it does not, then, from aught that appears, he can resort to Briscoe. If, however, the execution is to be regarded as paid, as is insisted by the complainant, then he has adequate relief at law. An injunction will not be granted to stay sale on an execution on the ground that the judgment has been paid. The sole remedy in such case is at law, where the execution can be stayed by a judge's order. Landsing *v.* Eddy, 1 John. Ch. Rep. 49.

Admitting, then, every thing that is urged in the bill in relation to the ratification of the acts of the agent, regarding the execution as having been paid, there is no ground for the interference of this court. Many things are said in the bill (all the facts are not, however, stated) going to show that the circuit court erred in its judgment, in setting aside the entry of satisfaction. Indeed the whole scope of the bill is an attempt to have the adjudication of a

court of law examined and reversed by a court of chancery. If the court of law has erred, there is a plain, direct mode prescribed to correct its errors. This court will not assume the right of the High Court of Errors. Whenever the case goes there, the judgment below, it is believed, can be successfully defended.

I. C. TUPPER contra.

The first question to be considered is, whether complainant has an adequate remedy at law? Although the proposition that "the entry of satisfaction on an execution operates as a suspension of the plaintiff's lien for the time being, so far as regards a purchaser without notice of any error in such entry," may be maintained, and probably with success. Still it is a matter of much doubt, especially when we consider it as connected with the circumstances of this case. As a general rule, I know of no reason why an erroneous entry of satisfaction made by the sheriff, on an execution, without the knowledge of the plaintiff, should operate, *per se*, as a suspension of the plaintiff's lien. But when such entry is made with the plaintiff's knowledge and assent, or that of his agent, (supposing it to be erroneous,) and particularly when the same has been acquiesced in for more than three years, the case assumes a different character. Here is a case of such palpable laches and negligence, to say the least of it, as courts of equity will not tolerate; especially when the rights of third persons are concerned, who have been induced to make contracts by reason of this very negligence, laches or fraud, and without any notice whatever of the errors afterwards exhibited. It is, then, the negligence or fraud of the plaintiffs in execution, and the notice or want of it to the purchaser, that materially affects the case; and these are subjects properly cognizable by a court of equity.

Now if we can suppose from the facts presented in the bill, that the return of the sheriff of "satisfied in full," made the 16th of February, 1839, was erroneous and false, there is here a case of laches and negligence on the part of the plaintiffs in execution, amounting to a fraud upon the rights of all subsequent purchasers of defendants in execution. The return was known and assented to by the plaintiffs through their agent, Chambers, who gave the sheriff a receipt in full for the money, in accordance

with his authority, and the plaintiffs acquiesced in such erroneous proceeding until May, 1842, more than three years thereafter.

Complainant does not contend that his purchase was prior to the judgment against his vendor, but supposes that his property is *prima facie* liable to the execution, and that the entry of satisfac-- tion does not of itself extinguish the lien, supposing it to be erro- neous, but it is the act of the plaintiffs themselves at the time of the return, and their delay in having it rectified. To obtain a dis- covery of all the facts connected with this transaction, and to quiet his title not only to the property actually levied on, but to all that he purchased from Briscoe, he humbly conceives that this suit is his proper remedy. With the above view of the case, recollecting the order of the court setting aside the return of satisfaction, could complainant have recourse against the sheriff, or in the event of a sale, against the purchaser? Certainly not. The judgment of the court and the execution protected both the sheriff and purcha- ser. But it is said he must resort to the statutory remedy of the trial of the right of property. In the first place, I deny that the statute giving a claimant a right, by giving bond, &c. to have an issue as to the right of property taken in execution, tried by a jury, restricts the claimant as to any rights or remedies which he had before the passage of that act. He may avail himself of the benefit of this act or not, as he pleases. But suppose he had re- sorted to this mode of redress—if I am correct in supposing that the entry of satisfaction did not *per se* extinguish the lien of the judgment, supposing it to be false—it would of course have been unavailing. The judgment of the court, of May, 1842, setting aside and annulling the return of February, 1839, could not be controverted, and the lien of the judgment would be considered as having attached at its date in 1837 or 1838.

For authorities, if any should be required, see at the conclusion of this argument.

But it is said, by the counsel for the motion, that we contend that the execution has actually been paid. True; it is so charged in the bill, and confidently urged by complainant's counsel. The judgment has been paid; the execution was correctly returned, and the plaintiffs have received their money.

The bill charges that W. R. Chambers was the agent of plain-

tiffs, and also exhibits a true copy of a letter of attorney, executed by plaintiffs. The receipt of Chambers, on the sheriff's docket, in full for plaintiffs' claim, signed by plaintiffs, "John M. Ross & Co." by their agent, Chambers; the order of plaintiffs' attorney at law, John B. Howcott, to pay over the money to Chambers, which was delivered to the sheriff and the money paid to Chambers, and his acts ratified by plaintiffs.

Now, without a denial of these charges, and the authenticity of these papers, I cannot conceive how it can be inferred that the judgment remains unpaid. But it is insisted that such an inference may be drawn from the fact that the circuit court of Madison county, in May, 1842, ordered that the entry of satisfaction be set aside. Now, it is that very order, or judgment, that has driven complainant to seek relief in this court; not for the purpose, as counsel very gravely insist, of having "the adjudication of a court of law examined and reversed by a court of chancery," but to be relieved from the unjust operations of an unjust judgment, to which he is not a party, and with which, from the nature of the case, he could have nothing to do. He seeks not to interfere in any manner with the judgment or its legitimate execution. He simply asks for his day in court, and that, in a proceeding where he can properly be made a party, in order that his rights may be properly understood and enforced.

The counsel for the motion has a happy faculty of making complainant assume any shape that may suit his fancy or his argument. At one time he is a third person, having no connection with the judgment or the parties to it, and should not apply to chancery for relief against a trespass committed by the sheriff. Again, he is nothing more nor less than a real defendant in execution, and must apply to the High Court of Errors and Appeals to reverse the judgment against him! Seriously : I trust it will not be insisted that complainant has or can have any thing to do with the judgment against Oglesby, Briscoe and others, in itself, either by correcting the errors of the circuit court or releasing them.

As much has been said on the subject of a release of errors, I will simply state that complainant does not ask for an "injunction to stay execution of any judgment at law." Such is not the in-

Charles Sevier *v.* John M. Ross & Co. *et al.*

tention or prayer of the bill. The judgment is as free, uncontrolled and effectual at this moment, against the defendants in execution, as it ever was.

Let it be supposed for a moment that the property of complainant levied on is liable to said execution, unless it can be shown that the judgment has actually been paid, how can complainant show that fact except by the mode to which he has resorted—a bill in chancery? When application was made in May, 1842, to set aside the return of satisfaction, the defendants in execution may not have been notified, or, if notified, (being insolvent) they may not have thought proper to adduce proof of the payment of the judgment. If so, they alone should suffer for their neglect. Such neglect cannot affect the rights of complainant. He certainly has a right to be heard before he shall suffer from the effects of such judgment.

The counsel for the motion states that the entry of satisfaction was made on the execution under some arrangements with the Messrs. Calhoon. No money was ever paid while the sheriff held the execution as an officer; and at May term, 1842, the return was set aside, on full proof offered, both for and against it; and that complainant resides with Briscoe, who is his father-in-law, &c. &c. As to some of these statements, the allegations of the bill are the reverse. As to the others, they may or may not be true, but, as the bill does neither allege or admit them, they cannot be considered in this motion.

Again, there is another ground for the injunction, which the counsel for the motion has not noticed, but which is in itself deemed sufficient to authorize relief from this court.

It appears that Briscoe sold a tract of land to Oglesby, (who is the principal debtor in said judgment,) but made no conveyance. Oglesby sold the land to George Calhoon, who agreed to pay off said judgment as part consideration, and Oglesby agreed to procure a conveyance from Briscoe. Briscoe being Oglesby's surety in said judgment, would make the conveyance only upon the condition that said judgment should be paid, and he released from his suretyship. Whereupon Calhoon paid or professed to pay the debt, the execution was returned satisfied as aforesaid, and the conveyance was soon afterwards made by Briscoe to Calhoon.

Here was a particular fund set apart by the principal debtor for the payment of the judgment, which was amply sufficient for the purpose. This fund is still available, and before the levy was made on complainant's property the plaintiffs in execution were requested by defendants in execution to levy upon that tract of land. Now if it should turn out that Calhoon did not really pay this judgment according to agreement, and the sheriff's return was false, who ought in justice and equity to pay the debt, in the absence of Oglesby, the principal debtor? Most assuredly Calhoon. And this tract of land having been set apart for that purpose by the principal debtor, is unquestionably liable to the execution in preference to property of a bona fide purchaser. The validity of contracts will be enforced, and the rights of bona fide purchasers protected by a court of equity. In New York, it has been decided that, an injunction will lie to restrain a judgment creditor from selling property of a subsequent purchaser of the debtor, until the vendor's property has been exhausted. Clowes *v.* Dickinson, 5 John. Chan. Rep. 240. The principles decided in that case, it is believed, are applicable to the case at bar. This ground of relief, it will be perceived, would have been available to Briscoe if he had not sold the property, and perhaps to Oglesby himself. It will not therefore be contended that a bona fide purchaser without notice, has not an equity at least equal to that of his vendor.

In conclusion, the injunction ought to be sustained,

First. Because, if the return "satisfied in full," of the 16th February, 1839, be false, the laches and negligence of plaintiffs in execution, if they did not assent to such return, amount to an implied assent, and to a fraud upon the rights of bona fide purchasers during the suspension of such execution.

Second. Because the judgment was actually paid, and the return of the 16th February, 1839, was true; and this suit is the proper and legitimate proceeding for complainant to substantiate that fact, and be relieved from the effects of the order of May, 1842, which is either unjust or made without a full hearing of all the evidence.

Third. Because, whether said return be true or false, the tract of land sold by Oglesby to Calhoon, and conveyed by Briscoe, is

Charles Sevier *v.* John M. Ross & Co. *et al.*

primarily liable for the satisfaction of the execution, as it now stands, and the property of complainant, being a bona fide purchaser, is not liable at least till the land has been exhausted.

Fourth. Complainant has no adequate remedy at law.

THE CHANCELLOR.

This is a motion to dissolve the injunction for want of equity in the bill, and is made upon two grounds:

First. That there is no release of errors to the judgment at law. This duty applies altogether to the defendant in execution. Here the injunction is at the instance of a third person, who asks merely to stay the execution as against his property, not to enjoin the judgment. But if it were otherwise, the court would presume a release of errors. Indeed I should hold that the emanation of the injunction worked *ipso facto* a release of errors.

Second. It is insisted that the complainant's remedy, if any, is at law. I cannot assent to this proposition. It is true as a general rule that where the personal property of a third person is seized under an execution, he will be left to his remedy at law. But the importance which has been attached to slave property, in the slave-holding states, has induced the establishment of a different rule in regard to that species of personal property, even without any allegation of peculiar and special value; and that rule has been repeatedly recognized in this court. These technical objections are not deemed sufficient to discharge the injunction. Upon the merits of the case as disclosed by the bill, I can have no doubt that the injunction should be retained. At the time of the purchase, by the complainant, of the property, which is now sought to be subjected to the judgment of the defendants, the records of the court of law showed that the judgment had been satisfied, and that it so stood for nearly three years. Whether this entry of satisfaction was false or not, could not affect the rights of the complainant, as a bona fide purchaser without notice of that fact. There would be no security whatever to purchasers if the public records are not to be credited, when examined with a view to ascertain the existence or non-existence of incumbrances upon the property about to be purchased. These records are consulted by

every prudent purchaser, and the law will not hold him liable beyond the facts which they disclose. The execution was not only returned satisfied, but the sheriff's docket showed the receipt of the money by the agent of the plaintiffs at law. The fact that this satisfaction was set aside by the court of law and a new execution ordered, cannot have the effect of making the judgment overreach the purchase which the complainant made upon the faith of the records and files of the court showing that judgment satisfied.

The motion to dissolve for want of equity must be overruled.